UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
_____X

TRENT TAYLOR,

               Plaintiff,                      CV-10-5655 (SJF)(WDW)

    -against-

                                     **OPINION & ORDER**
P.O. LEROY RIDLEY, Shield No. 1214,
P.O. JAMES JOHNSON, Shield No. 1205, and            **FILED**
TOWN OF HEMPSTEAD [sic],                  IN CLERK'S OFFICE
                                     U S DISTRICT COURT E D N Y

               Defendants.              ★  OCT 19 2012  ★
_____X
                                     LONG ISLAND OFFICE

FEUERSTEIN, J.

      On December 6, 2010, *pro se* plaintiff Trent Taylor ("plaintiff") commenced this action

pursuant to 42 U.S.C. § 1983 against defendants Police Officer Leroy Ridley ("Ridley"), Shield

No. 1214; Police Officer James Johnson ("Johnson"), Shield No. 1205; and the Incorporated

Village of Hempstead, i/s/h Town of Hempstead ("the Village") (collectively, "defendants"),

alleging violations of his constitutional rights. Pending before the Court is defendants'

unopposed motion seeking summary judgment dismissing plaintiff's claims in their entirety

pursuant to Rule 56 of the Federal Rules of Civil Procedure.[1] For the reasons set forth below,

---

[1] Defendants served plaintiff with their motion for summary judgment, together with the notice to *pro se* litigants required by Rule 56.2 of the Local Civil Rules of the United States District Courts for the Southern and Eastern Districts of New York ("the Local Civil Rules"), on or about April 30, 2012, in accordance with a briefing schedule set by this Court during a conference on March 21, 2012, at which plaintiff was present telephonically. Pursuant to the March 21, 2012 briefing schedule, plaintiff was required to serve any response to the motion by June 1, 2012. On June 8, 2012, defendants advised the Court that they did not receive any response to their motion by plaintiff and filed their motion for summary judgment as unopposed. To date, plaintiff has not filed any response to defendants' motion, nor sought an extension of time to do so.

1

defendants' motion is granted.

I.    Background

    A.    Factual Background[2]

On March 21, 2009, at approximately 3:35 a.m., Village police officers were summoned to the parking lot of Rumba Sky, a nightclub located at 19 North Franklin Street in the Village, to respond to a disturbance. (Defendants' Local Rule 56.1 Statement ["56.1 Stat."], ¶ 1; Declaration of Debra Urbano-DiSalvo ["Urbano-DiSalvo Decl."], Ex. C, Ex. H at 9, and Ex. M1 at 5, 46, 72). When Ridley arrived at the location, there was "a ton of people" there and plaintiff's friend, Angelo McDeegan, was drunk, yelling and acting disorderly. (56.1 Stat., ¶ 2; Urbano-DiSalvo Decl., Ex. E at 17-21, 69, 91, Ex. M1 at 18-20, Ex. M2 at 111-12). When Lieutenant Joseph Sortino ("Sortino") arrived at the location, he instructed his officers to disperse the large crowd spread out in the parking lot by telling them to leave or they would be arrested. (56.1 Stat., ¶ 3; Urbano-DiSalvo Decl., Ex. H at 9-10, 17, 24). Although Ridley told everyone in the parking lot to go home, (56.1 Stat., ¶ 4; Urbano-DiSalvo Decl., Ex. E at 19-24, 70-1, Ex. M1 at 19, 21, 31, 82 and Ex. M2 at 112, 122), plaintiff instead walked or ran to his car in the lot crowded with people whom the officers were trying to disperse, (56.1 Stat., ¶ 7; Urbano-DiSalvo Decl., Ex. E at 22, 92, Ex. H at 10-11, 17-8, Ex. M1 at 21-2, 34, 41-2 and Ex.

_____

[2] The facts are taken from the assertions in defendants' unopposed Statement of Undisputed Facts pursuant to Rule 56.1 of the Local Civil Rules, which are supported by the record. Although I reviewed the record to ascertain that defendants' assertions in their 56.1 Statement were supported thereby, I decline to exercise my discretion to conduct an independent "assiduous review" of the record, see Holtz v. Rockefeller & Co., Inc., 258 F.3d 62, 73 (2d Cir. 2001), particularly since plaintiff has failed to oppose or otherwise respond to the motion in any way.

M2 at 112-16, 122-5), and ignored Ridley when he told him to stop and put his hands behind his back. (56.1 Stat., ¶ 9; Urbano-DiSalvo Decl., Ex. E at 22-25, 28, 45-6, 72-3, 92, Ex. H at 11, Ex. M1 at 22, 24, 82 and Ex. M2 at 113-15, 128). Plaintiff testified that from Ridley's perspective, there were grounds for him to believe that plaintiff was disobeying his orders. (56.1 Stat., ¶ 8; Urbano-DiSalvo Decl., Ex. E at 92-4).

Upon plaintiff's failure to comply with Ridley's orders, Sortino instructed Ridley and Johnson to arrest plaintiff for disorderly conduct. (Urbano-DiSalvo Decl., Ex. H at 12, 21-2 and Ex. M1 at 50, 64-5, 75, 82-3). When Ridley and Johnson attempted to arrest plaintiff for disorderly conduct, he resisted arrest. (56.1 Stat., ¶ 10; Urbano-DiSalvo Decl., Ex. E at 38-9, 46-9, 73, 79, 91, Ex. H at 12, Ex. M1 at 26-7, 42, 48-50, 61, 68, 75-6 and Ex. M2 at 116, 131-34). At his deposition, plaintiff admitted that he was not hit in the head with a nightstick and knocked to the ground, nor kicked or beaten when he was on the ground, as he alleged in his complaint. (56.1 Stat., ¶ 11; see Compl., ¶ IV; Urban-DiSalvo Decl., Ex. E at 77-9). Rather, plaintiff accidentally fell to the ground while resisting arrest and being handcuffed. (56. Stat., ¶¶ 12-13; Urbano-DiSalvo Decl., Ex. E at 23, 34-43, 47-9, 73, Ex. M1 at 28, 51, 66-7, 76 and Ex. M2 at 117, 135-37, 144-45-48). As a result of falling to the ground, plaintiff injured his right shoulder and scraped his right elbow. (56.1 Stat., ¶ 14; Urbano-DiSalvo Decl., Ex. E at 36-7, 73, 86, Ex. M1 at 78 and Ex. M2 at 138-40). However, plaintiff did not seek medical attention for those injuries, (56.1 Stat., ¶ 15; see Urbano-DiSalvo Decl., Ex. E at 8-10, 34, 62-4, 80, 85), and has not alleged any injuries resulting from any purported kick or beating.

Plaintiff was arrested and charged with assault in the second degree, resisting arrest and disorderly conduct. (56.1 Stat., ¶ 16; Urbano-DiSalvo Decl., Ex. D). On August 24, 2009, the

grand jury of Nassau County returned an indictment charging plaintiff with one (1) count of assault in the second degree (N.Y. Penal Law § 120.05(3)); one (1) count of assault in the third degree (N.Y. Penal Law § 120.00(2)); one (1) count of obstructing governmental administration in the second degree (N.Y. Penal Law § 195.05); one (1) count of resisting arrest (N.Y. Penal Law § 205.30); and one (1) count of disorderly conduct (N.Y. Penal Law § 240.20(1)). (56.1 Stat., ¶ 17; see Urbano-DiSalvo Decl., Exs. E at 27-28 and G).

Following his arrest, plaintiff was in custody for approximately two (2) days, until the court rescinded any bail requirements. (56.1 Stat., ¶ 20; Urbano-DiSalvo Decl., Ex. E at 34, 49-50, 85). However, plaintiff has been in custody since September 17, 2009, after being arrested on unrelated charges to which he pled guilty. (56.1 Stat., ¶ 21; see Urbano-DiSalvo Decl., Ex. E at 10-11, 51, 57, 60-1).

On May 7, 2010, a suppression hearing was held in the Supreme Court of the State of New York, Nassau County (McCormack, J.) ("the hearing court"), to determine whether there was probable cause to arrest plaintiff and whether Sortino could testify at trial regarding plaintiff's physical condition at the time of his arrest. (56.1 Stat., ¶ 18; Urbano-DiSalvo Decl., Ex. H).[3]

On May 17, 2010, plaintiff was acquitted of the criminal charges against him. (56.1 Stat., ¶ 19).

It is undisputed that plaintiff did not file a notice of claim against defendants. (56.1 Stat.,

---

[3] The hearing court determined, *inter alia*, that the prosecution had established that the officers had probable cause to arrest plaintiff for disorderly conduct and that the prosecution would be permitted to question Sortino at trial regarding plaintiff's statements to him about his physical condition following the arrest. (Urbano-DiSalvo Decl., Ex. H at 41-3).

¶ 21; Urbano-DiSalvo Decl., Ex. I).


B.      Procedural History

On December 6, 2010, plaintiff commenced this action pursuant to 42 U.S.C. § 1983 against defendants alleging violations of his constitutional rights.  On September 19, 2011, defendants served plaintiff with demands for documents and interrogatories.  (56.1 Stat., ¶ 22; Urbano-DiSalvo Decl., Ex. J).  By letter dated January 3, 2012, defendants followed with plaintiff for a response to their discovery demands.  (56.1 Stat., ¶ 23; Urbano-DiSalvo Decl., Ex. K).  During a telephone conference with the Honorable William D. Wall, United States Magistrate Judge, plaintiff was advised that his failure to respond to defendants' discovery demands could result in the dismissal of this action.  (56.1 Stat., ¶ 24).  Plaintiff has not responded to defendants' discovery demands to date.  (56.1 Stat., ¶¶ 23-26; see Urbano-DiSalvo Decl., Ex. E at 6-8, 12-16).

Defendants now move, *inter alia*, for summary judgment dismissing plaintiff's claims in their entirety pursuant to Rule 56 of the Federal Rules of Civil Procedure.


II.     Discussion

A.      Standard of Review

Summary judgment should not be granted unless "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  In ruling on a summary judgment motion, the district court must first "determine whether

there is a genuine dispute as to a material fact, raising an issue for trial." McCarthy v. Dun & Bradstreet Corp., 482 F.3d 184, 202 (2d Cir. 2007) (internal quotations and citations omitted); see Ricci v. DeStefano, 557 U.S. 557, 129 S.Ct. 2658, 2677, 174 L.Ed.2d 490 (2009) (holding that "[o]n a motion for summary judgment, facts must be viewed in the light most favorable to the nonmoving party *only* if there is a 'genuine' dispute as to those facts." (Emphasis added) (internal quotations and citation omitted)). "A fact is material if it might affect the outcome of the suit under governing law." Ramos v. Baldor Specialty Foods, Inc., 687 F.3d 554, 558 (2d Cir. 2012) (quotations and citation omitted); see also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986); Rojas v. Roman Catholic Diocese of Rochester, 660 F.3d 98, 104 (2d Cir. 2011), cert. denied, 132 S. Ct. 1744, 182 L. Ed. 2d 530 (2012) (accord). "Where the undisputed facts reveal that there is an absence of sufficient proof as to one essential element of a claim, any factual disputes with respect to other elements become immaterial and cannot defeat a motion for summary judgment." Chandok v. Klessig, 632 F.3d 803, 812 (2d Cir. 2011); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322-23, 106 S. Ct. 2548, 91 L.Ed.2d 265 (1986) (holding that summary judgment is appropriate when the non-moving party has no evidentiary support for an essential element for which it bears the burden of proof).

If the district court determines that there is a genuine dispute as to a material fact, the court must then "resolve all ambiguities, and credit all factual inferences that could rationally be drawn, in favor of the party opposing summary judgment," Spinelli v. City of New York, 579 F.3d 160, 166 (2d Cir. 2009) (internal quotations and citation omitted); see also Jeffreys v. City of New York, 426 F.3d 549, 553 (2d Cir. 2005) ("When considering a motion for summary

6

judgment, a court must construe the evidence in the light most favorable to the nonmoving party, drawing all inferences in that party's favor."), to determine whether there is a genuine issue for trial. See Ricci, 557 U.S. 557, 129 S.Ct. at 2677. "An issue is 'genuine' if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Rojas, 660 F.3d at 104 (quoting Anderson, 477 U.S. at 248, 106 S. Ct. 2505); see also Ramos, 687 F.3d at 558. "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." Ricci, 557 U.S. 557, 129 S.Ct. at 2677 (quoting Matsushita Elec. Industrial Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986)); see also Fabrikant v. French, 691 F.3d 193, 205 (2d Cir. 2012) ("There is no genuine issue of material fact where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." (quotations and citation omitted); Jeffreys, 426 F.3d at 553 ("The judge must ask not whether the evidence unmistakably favors ones [sic] side or the other but whether a fair-minded jury could return a verdict for the plaintiff on the evidence presented." (quotations, alterations and citation omitted)).

Although generally, "[a]ssessments of credibility and choices between conflicting versions of the events are matters for the jury, not for the court on summary judgment," Jeffreys, 426 F.3d at 553-54 (quotations and citations omitted); see also McClellan v. Smith, 439 F.3d 137, 144 (2d Cir. 2006) ("[C]redibility assessments, choices between conflicting versions of the events, and the weighing of evidence are matters for the jury, not for the court on a motion for summary judgment." (quotations and citation omitted), there is a "narrow exception" to that rule, see Blake v. Race, 487 F. Supp. 2d 187, 202 (E.D.N.Y. 2007); Suarez v. American Stevedoring, Inc., No. 06-cv-6721, 2009 WL 3762686, at * 17; see also Fincher v. Depository Trust &

Clearing Corp., 604 F.3d 712, 725-26 (2d Cir. 2010) (recognizing an exception to the rule that "a district court may not discredit a witness's * * * testimony on a motion for summary judgment"), "in the rare circumstance where the plaintiff relies almost exclusively on his own testimony, much of which is contradictory and incomplete, * * *." Jeffreys, 426 F.3d at 554; see also Rojas, 660 F.3d at 106 ("[I]n certain extraordinary cases, where the facts alleged are so contradictory that doubt is cast upon their plausibility, the court may pierce the veil of the plaintiff's factual allegations and dismiss the claim." (quotations and citation omitted)). "[I]n certain cases a party's inconsistent and contradictory statements transcend credibility concerns and go to the heart of whether the party has raised *genuine* issues of material fact to be decided by a jury." Rojas, 660 F.3d at 106 (emphasis in original).

"The moving party bears the burden of establishing the absence of any genuine issue of material fact," Zalaski v. City of Bridgeport Police Department, 613 F.3d 336, 340 (2d Cir. 2010); see also Vivenzio v. City of Syracuse, 611 F.3d 98, 106 (2d Cir. 2010) (accord), after which the burden shifts to the nonmoving party to "come forward with specific evidence demonstrating the existence of a genuine dispute of material fact." Brown v. Eli Lilly & Co., 654 F.3d 347, 358 (2d Cir. 2011); see also F.D.I.C. v. Great American Ins. Co., 607 F.3d 288, 292 (2d Cir. 2010). Once the moving party meets its burden, the nonmoving party can only defeat summary judgment "by coming forward with evidence that would be sufficient, if all reasonable inferences were drawn in [its] favor, to establish the existence of" a factual question that must be resolved at trial. Spinelli, 579 F.3d at 166 (internal quotations and citations omitted); see also Celotex Corp., 477 U.S. at 323, 106 S.Ct. 2548. "The mere existence of a scintilla of evidence in support of the [non-movant's] position will be insufficient; there must be evidence on which the

jury could reasonably find for the [non-movant]." Hayut v. State Univ. of N.Y., 352 F.3d 733, 743 (2d Cir. 2003) (alterations in original); see also Lyons v. Lancer Ins. Co., 681 F.3d 50, 56-7 (2d Cir. 2012); Jeffreys, 426 F.3d at 554. The nonmoving party cannot avoid summary judgment simply by asserting "some 'metaphysical doubt as to the material facts[,]'" DeFabio v. East Hampton Union Free School District, 623 F.3d 71,81 (2d Cir. 2010) (quoting Jeffreys, 426 F.3d at 554); "may not rely on conclusory allegations or unsubstantiated speculation," Jeffreys, 426 F.3d at 554 (quotations and citations omitted); see also DeFabio, 623 F.3d at 81; and must offer "some hard evidence showing that its version of the events is not wholly fanciful." Miner v. Clinton County, New York, 541 F.3d 464, 471 (2d Cir. 2008); see also McCarthy, 482 F.3d at 202 (accord).

Rule 56(c)(1) of the Federal Rules of Civil Procedure provides, in relevant part, that "[a] party asserting that a fact cannot be or is genuinely disputed must support the assertion by: (A) citing to particular parts of materials in the record * * *; or (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Rule 56(e) provides, in relevant part, that "[i]f a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may: * * * (2) consider the fact undisputed for purposes of the motion; [or] (3) grant summary judgment if the motion and supporting materials– including the facts considered undisputed– show that the movant is entitled to it; * * *." Fed. R. Civ. P. 56(e). "Rule 56(e) * * * requires the nonmoving party to *go beyond the pleadings* and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file [as well as documents, electronically stored information, stipulations and other

materials, see Fed. R. Civ. P. 56(c)(1)(A)],' designate 'specific facts showing that there is a genuine issue for trial." Celotex Corp., 477 U.S. at 324, 106 S. Ct. 2548 (emphasis added); see also Holcomb v. Iona College, 521 F. 3d 130, 137 (2d Cir. 2008) (accord). "Rule 56(e) permits a proper summary judgment motion to be opposed by any of the kinds of evidentiary materials listed in Rule 56(c), *except the mere pleadings themselves * * *,*" Celotex Corp., 477 U.S. at 324, 106 S. Ct. 2548 (emphasis added); see also Fitzgerald v. Henderson, 251 F.3d 345, 360-61 (2d Cir. 2001) ("In general, a party opposing a properly supported motion for summary judgment is not entitled to rely solely on the allegations of her pleading, but must show that there is admissible evidence sufficient to support a finding in her favor on the issue that is the basis for the motion."), unless the pleadings are verified in a manner "equivalent of the oath that would be given with respect to an affidavit," Fitzgerald, 251 F.3d at 361; see also Patterson v. County of Oneida, New York, 375 F.3d 206, 219 (2d Cir. 2004) ("[A] verified pleading, to the extent that it makes allegations on the basis of the plaintiff's personal knowledge, and not merely on information and belief, has the effect of an affidavit and may be relied on to oppose summary judgment."); Colon v. Coughlin, 58 F.3d 865, 872 (2d Cir. 1995) (holding that since the plaintiff had "verified his complaint by attesting under penalty of perjury that the statements [therein] were true to the best of his knowledge * * * [it] is to be treated as an affidavit for summary judgment purposes."), and assert factual matters other than upon "information and belief." See Patterson, 375 F.3d at 219; Fitzgerald, 251 F.3d at 361. "In ruling on a motion for summary judgment, the district court may rely on any material that would be admissible or usable at trial." Major League Baseball Properties, Inc. v. Salvino, Inc., 542 F.3d 290, 309 (2d Cir. 2008) (internal quotations and citations omitted); see also Lyons, 681 F.3d at 57 (accord). "A party

10

opposing summary judgment does not show the existence of a genuine issue of fact to be tried merely by making assertions that are conclusory * * * or based on speculation." Major League Baseball, 542 F.3d at 310; Katel Ltd. Liability Co. v. AT&T Corp., 607 F.3d 60, 67 (2d Cir. 2010) (accord); see also Brown, 654 F.3d at 358 (holding that the nonmoving party "may not rely on conclusory allegations or unsubstantiated speculation" to defeat summary judgment). "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." Scott v. Harris, 550 U.S. 372, 380, 127 S. Ct. 1769, 167 L. Ed. 2d 686 (2007).

"Rule 56.1 of the Local Civil Rules of the United States District Courts for the Southern and Eastern Districts of New York ("Local Rule 56.1") requires a party moving for summary judgment to submit a statement of the allegedly undisputed facts on which the moving party relies, together with citation to the admissible evidence of record supporting each such fact. * * * If the opposing party then fails to controvert a fact so set forth in the moving party's Rule 56.1 statement, that fact will be deemed admitted." Giannullo v. City of New York, 322 F.3d 139, 140 (2d Cir. 2003); see also Holtz v. Rockefeller & Co., Inc., 258 F.3d 62, 73 (2d Cir. 2001) ("A party opposing summary judgment must respond with a statement of facts as to which a triable issue remains. See Local Rule 56.1(b). The facts set forth in a moving party's statement 'will be deemed to be admitted unless controverted' by the opposing party's statement. Local Rule 56.1(c)."); Local Civ. R. 56.1(a)-(c). Local Civil Rule 56.1(d) requires that "[e]ach [56.1] statement by the movant or opponent * * *, including each statement controverting any statement of material fact, [] be followed by citation to evidence which would be admissible, set forth as

required by Fed. R. Civ. P. 56(c)." Courts may decline to "consider as disputed any statement [in the movants' Local Rule 56.1 statement] supported by admissible evidence to which [the non-movant] objects, but does not support with evidence, * * *, in perfect accordance with Local Rule 56.1(d), * * *." Feis v. United States, 394 Fed. Appx. 797, 799 (2d Cir. Oct. 1, 2010) (summary order) (quotations and emphasis omitted). "[A] Local Rule 56.1 statement is not itself a vehicle for making factual assertions that are otherwise unsupported in the record." Holtz, 258 F.3d at 74; see also New York Civil Liberties Union v. Grandeau, 528 F.3d 122, 132 (2d Cir. 2008). "[A]llegations * * * cannot be deemed true simply by virtue of their assertion in a Local Rule 56.1 statement." Holtz, 258 F.3d at 73; see also Vermont Teddy Bear Co., Inc. v. 1-800 Beargram Co., 373 F.3d 241, 245 (2d Cir. 2004) ("[T]he district court may not rely solely on the statement of undisputed facts contained in * * * [a] 56.1 statement * * * [and] must be satisfied that the citation to evidence in the record supports the assertion.") "[W]here there are no[] citations or where the cited materials do not support the factual assertions in the [56.1] Statements, the Court is free to disregard the assertion," Holtz, 258 F.3d at 73-4 (quotations and citations omitted), and review the record independently. Id. at 74. However, "[w]hile the trial court has discretion to conduct an assiduous review of the record in an effort to weigh the propriety of granting a summary judgment motion, it is not required to consider what the parties fail to point out." Monahan v. New York City Department of Corrections, 214 F.3d 275, 292 (2d Cir. 2000) (quotations and citations omitted); see also 24/7 Records, Inc. v. Sony Music Entertainment, Inc., 429 F.3d 39, 46 (2d Cir. 2005); Amnesty America v. Town of West Hartford, 288 F.3d 467, 470 (2d Cir. 2002) (holding that Rule 56 "does not impose an obligation on a district court to perform an independent review of the record to find proof of a factual

dispute.")

B.    False Arrest/Imprisonment Claim

"To establish a claim for false arrest under 42 U.S.C. § 1983, a plaintiff must show that 'the defendant intentionally confined him without his consent and without justification.'" Escalera v. Lunn, 361 F.3d 737, 743 (2d Cir. 2004) (quoting Weyant v. Okst, 101 F.3d 845, 852 (2d Cir. 1996)); see also Covington v. City of New York, 171 F.3d 117, 122 (2d Cir. 1999) (accord). "Because probable cause to arrest constitutes justification, there can be no claim for false arrest where the arresting officer had probable cause to arrest the plaintiff." Escalera, 361 F.3d at 743; see also Amore v. Novarro, 624 F.3d 522, 536 (2d Cir. 2010) (accord); Torraco v. Port Authority of New York and New Jersey, 615 F.3d 129, 139 (2d Cir. 2010) (holding that since "[t]he Fourth Amendment right to be free from unreasonable seizures includes the right to be free from arrest absent probable cause * * *, the existence of probable cause is an absolute defense to a false arrest claim." (quotations and citations omitted); Dickerson v. Napolitano, 604 F.3d 732, 751 (2d Cir. 2010) ("Probable cause is a complete defense to any action for false arrest * * * in New York."); Jenkins v. City of New York, 478 F.3d 76, 84 (2d Cir. 2007) ("A section 1983 claim for false arrest is substantially the same as a claim for false arrest under New York law[4]. * * * The existence of probable cause to arrest constitutes justification and is a complete

---

[4]  "To state a claim for false arrest under New York law, a plaintiff must show that (1) the defendant intended to confine the plaintiff, (2) the plaintiff was conscious of the confinement, (3) the plaintiff did not consent to the confinement, and (4) the confinement was not otherwise privileged." Savino v. City of New York, 331 F.3d 63, 75 (2d Cir. 2003) (quotations and citation omitted).  Under New York law, justification for an arrest "may be established by showing that the arrest was based on probable cause." Id. at 76.

13

defense to an action for false arrest, whether that action is brought under state law or under Section 1983." (quotations and citations omitted)). "Probable cause to arrest exists when the arresting officer has 'knowledge or reasonably trustworthy information of facts and circumstances that are sufficient to warrant a person of reasonable caution in the belief that the person to be arrested has committed or is committing a crime.'" Escalera, 361 F.3d at 743 (quoting Weyant, 101 F.3d at 852); see also Fabrikant, 691 F.3d at 214 (accord); Marcavage v. City of New York, 689 F.3d 98, 109 (2d Cir. 2012) (holding that a warrantless arrest "comports with the Fourth Amendment if the officer has probable cause to believe that a criminal offense has been or is being committed." (quotations and citation omitted)); Zellner v. Summerlin, 494 F.3d 344, 369 (2d Cir. 2007) ("Probable cause to arrest exists when the officers have knowledge of, or reasonably trustworthy information as to, facts and circumstances that are sufficient to warrant a person of reasonable caution in the belief that an offense has been or is being committed by the person to be arrested.") "A court assessing probable cause must 'examine the events leading up to the arrest, and then decide whether these historical facts, viewed from the standpoint of an objectively reasonable police officer, amount to probable cause.'" Marcavage, 689 F.3d at 109 (quoting Maryland v. Pringle, 540 U.S. 366, 371, 124 S. Ct. 795, 157 L. Ed. 2d 769 (2003)); see also Torraco, 615 F.3d at 139 ("The probable cause inquiry is based upon whether the facts known by the arresting officer at the time of the arrest objectively provided probable cause to arrest * * *, i.e., it is objective rather than subjective." (quotations, alterations and citations omitted)); Jaegly v. Couch, 439 F.3d 149, 153-54 (2d Cir. 2006) ("[T]he probable cause inquiry is based upon whether the facts known by the arresting officer at the time of the arrest objectively provided probable cause to arrest * * * [and] is objective rather than

14

subjective.") "Probable cause is * * * evaluated on the totality of the circumstances." <u>Jenkins</u>, 478 F.3d at 90; <u>see</u> <u>also</u> <u>Manganiello v. City of New York</u>, 612 F.3d 149, 161 (2d Cir. 2010). "[U]nder both New York and federal law, summary judgment dismissing a plaintiff's false arrest claim is appropriate if the undisputed facts indicate that the arresting officer's probable cause determination was objectively reasonable. * * * If, however, on the undisputed facts the officer would be unreasonable in concluding probable cause existed, or if the officer's reasonableness depended on material issues of fact, then summary judgment is inappropriate for both New York and federal false arrest claims." <u>Jenkins</u>, 478 F.3d at 88.

"A Fourth Amendment claim turns on whether probable cause existed to arrest [the plaintiff] for any crime * * *." <u>Marcavage</u>, 689 F.3d at 109; <u>see</u> <u>also</u> <u>Jaegly</u>, 439 F.3d at 154 ("[A] claim for false arrest turns only on whether probable cause existed to arrest a defendant, and * * * it is not relevant whether probable cause existed with respect to each individual charge, or, indeed, any charge actually invoked by the arresting officer at the time of arrest. * * * [The] focus [is] on the validity of the *arrest*, and not on the validity of each charge." (emphasis in original)). Under New York law, a person is guilty of disorderly conduct when, "with intent to cause public inconvenience, annoyance or alarm, or recklessly creating a risk thereof: * * * (6) He congregates with other persons in a public place and refuses to comply with a lawful order of the police to disperse * * *." Even viewing the evidence in a light most favorable to plaintiff, a person of reasonable caution who knew that plaintiff (1) admittedly rejected Ridley's directives to disperse from the parking lots in which a large crowd, with a least one loud, intoxicated and unruly individual, had congregated and (2) instead walked and/or ran further into a crowded lot for reasons then-unknown to the arresting officers, would possess sufficient information to

15

believe that plaintiff was committing the offense of disorderly conduct. See, e.g. Marcavage, 689 F.3d at 110 (finding that probable cause supported the arrests of the plaintiffs for obstruction of governmental administration because plaintiffs rejected seventeen (17) directives by three (3) officers to leave a no-demonstration zone). Therefore, defendants had probable cause to arrest plaintiff. Accordingly, the branch of defendants' motion seeking summary judgment dismissing plaintiff's Fourth Amendment false arrest and/or imprisonment claims is granted and those claims are dismissed with prejudice.


C.    Excessive Force Claims

Claims that a law enforcement officer used excessive force in the course of making an arrest are "analyzed under the Fourth Amendment's 'objective reasonableness' standard * * *." Graham v. Connor, 490 U.S. 386, 388, 395, 109 S. Ct. 1865, 104 L. Ed. 2d 443 (1989); see also Scott, 550 U.S. at 381, 127 S. Ct. 1769 (holding that "a claim of excessive force in the course of making a seizure of the person is properly analyzed under the Fourth Amendment's objective reasonableness standard." (quotations, alterations and citation omitted)); Terranova v. New York, 676 F.3d 305, 308 (2d Cir. 2012), cert. denied, 2012 WL 4475671 (Oct. 1, 2012) ("Claims that the police used excessive force are judged under the Fourth Amendment's 'objective reasonableness' standard." (quotations and citation omitted)). "Determining whether the force used to effect a particular seizure is 'reasonable' under the Fourth Amendment requires a careful balancing of the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake." Graham, 490 U.S. at 396, 109 S. Ct. 1865 (quotations and citation omitted); see also Scott, 550 U.S. at 383, 127 S. Ct.

16

1769; Tracy v. Freshwater, 623 F.3d 90, 96 (2d Cir. 2010). "[T]he right to make an arrest * * * necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it." Graham, 490 U.S. at 396, 109 S. Ct. 1865. Proper application of the Fourth Amendment's "objective reasonableness" standard "requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." Graham, 490 U.S. at 396, 109 S. Ct. 1865; see also Terranova, 676 F.3d at 308 (accord); Tracy, 623 F.3d at 96 (accord).

"The 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." Graham, 490 U.S. at 396, 109 S. Ct. 1865; see also Tracy, 623 F.3d at 96 (accord); Jones v. Parmley, 465 F.3d 46, 61 (2d Cir. 2006) (accord). "Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, * * * violates the Fourth Amendment," Graham, 490 U.S. at 396, 109 S. Ct. 1865 (quotations and citation omitted); see also Tracy, 623 F.3d at 96 (accord), although allegations that an "officer twisted [the plaintiff's] arm, "yanked" her, and threw her up against a car, causing only bruising" have been held to be sufficient to survive summary judgment. Maxwell v. City of New York, 380 F.3d 106, 108 (2d Cir. 2004) (citing Robison v. Via, 821 F.2d 913, 924-25 (2d Cir. 1987)). "The calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments– in circumstances that are tense, uncertain, and rapidly evolving– about the amount of force that is necessary in a particular situation." Graham, 490 U.S. at 396-97, 109 S. Ct. 1865; see also Tracy, 623 F.3d at 96 (accord); Jones, 465 F.3d at 61. "As in other Fourth Amendment contexts,

* * * the 'reasonableness' inquiry in an excessive force case is an objective one: the question is whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." Graham, 490 U.S. at 397, 109 S. Ct. 1865; see also Jones, 465 F.3d at 61 (accord); Maxwell, 380 F.3d at 108 (accord). "Given the fact-specific nature of the [objective reasonableness] inquiry, granting summary judgment against a plaintiff on an excessive force claim is not appropriate unless no reasonable fact-finder could conclude that the officers' conduct was objectively unreasonable." Amnesty America v. Town of West Hartford, 361 F.3d 113, 123 (2d Cir. 2004).

This is one of those "extraordinary cares," Rojas, 660 F.3d at 106, in which no reasonable factfinder could conclude in favor of plaintiff on his excessive force claim because that claim relies almost exclusively upon plaintiff's allegations in his complaint, which are unexplainedly inconsistent and contradictory with his testimony at the criminal trial and his deposition, at least in terms of the force allegedly used during his arrest, and are uncorroborated by any independent evidence in the record. See Jeffreys, 426 F.3d at 554-55; see also Tota v. Bentley, 379 Fed. Appx. 31, 34 (2d Cir. May 25, 2010); Dove v. City of New York, No. 03-cv-5052, 2007 WL 805786, at * 5-6 (E.D.N.Y. Mar. 15, 2007). Although plaintiff alleges in his verified complaint that Ridley "hit [him] in the head with his nightstick knocking [him] to the ground[,] [a]t which time [he and Johnson] proceeded to kick [him] and beat [him] without cause as [he] lay helpless on the ground," (Compl., ¶ IV), those allegations are contradicted by plaintiff's own testimony during his criminal trial and deposition in this action, as well as by the testimony of the arresting officers and Sortino, inter alia, that plaintiff: (a) resisted arrest, (56.1 Stat., ¶ 10; Urbano-DiSalvo Decl., Ex. E at 38-9, 46-9, 73, 79, 91, Ex. H at 12, Ex. M1 at 26-7, 42, 48-50, 61, 68, 75-6 and

18

Ex. M2 at 116, 131-34); (b) was not hit in the head with a nightstick and knocked to the ground, nor kicked or beaten when he was on the ground, as alleged in his complaint, (56.1 Stat., ¶ 11; see Compl., ¶ IV; Urban-DiSalvo Decl., Ex. E at 77-9); (c) accidentally fell to the ground while resisting arrest and being handcuffed, (56. Stat., ¶¶ 12-13; Urbano-DiSalvo Decl., Ex. E at 23, 34-43, 47-9, 73, Ex. M1 at 28, 51, 66-7, 76 and Ex. M2 at 117, 135-37, 144-45-48); (d) injured his right shoulder and scraped his right elbow as a result of falling to the ground while resisting arrest, (56.1 Stat., ¶ 14; Urbano-DiSalvo Decl., Ex. E at 36-7, 73, 86, Ex. M1 at 78 and Ex. M2 at 138-40); and (e) did not seek any medical attention for any injuries following his arrest, (56.1 Stat., ¶ 15; see Urbano-DiSalvo Decl., Ex. E at 8-10, 34, 62-4, 80, 85). "[J]ust as the court should not accept an affidavit that contradicts deposition testimony, it should also not allow inconsistent allegations made in a complaint to defeat summary judgment in the face of contradictory testimony either." AB ex rel. EF v. Rhinebeck Central School District, 361 F. Supp. 2d 312, 316 (S.D.N.Y. 2005). "Faced with deposition [and trial] testimony that contradicts * * * [plaintiff's] [verified] complaint, this court must accept [plaintiff's] sworn testimony," id.; see also Thomas v. Westchester County Health Care Corp., 232 F. Supp. 2d 273, 279 (S.D.N.Y. 2002) ("Faced with [a] confounding contradiction [between the plaintiff's allegations in her complaint and her sworn testimony], the Court has no basis for accepting as true the vague statements in [the] complaint as opposed to [the plaintiff's] sworn testimony * * *."), i.e., that he was not hit with a nightstick, kicked or beaten, but rather was injured when he fell to the ground while resisting arrest.

In any event, as a matter of law, any force used by Ridley and/or Johnson in effecting plaintiff's arrest was reasonable under the circumstances of this case. By plaintiff's own

admission: (a) he was part of a large crowd containing at least one (1) noisy, intoxicated and unruly member; (b) he ignored Ridley's directive to disperse and instead walked deeper into the crowd for reasons then-unknown to the officers; and (c) he actively resisted arrest by Ridley and continued resisting when Johnson came to assist Ridley in effecting the arrest, thereby rendering the initial crime for which plaintiff was being arrested, i.e., disorderly crime, more serious, see, e.g. Kalfus v. New York and Presbyterian Hospital, No. 10-4201-cv, 2012 WL 1232999, at * 3 (2d Cir. Apr. 13, 2012) (summary order) (affirming dismissal of the plaintiff's excessive force claim because no reasonable factfinder could conclude that the officers' actions were excessive where, *inter alia*, the plaintiff had resisted arrest by refusing to stand up or to permit himself to be handcuffed, and the officers used only reasonable force to overcome his resistance); Tracy, 623 F.3d at 98 (finding that the crime for which the plaintiff was being arrested became more serious when the plaintiff unquestionably resisted arrest); Sullivan v. Gagnier, 225 F.3d 161, 165 (2d Cir. 2000) ("The fact that a person whom a police officer attempts to arrest resists, threatens, or assaults the officer no doubt justifies the officer's use of *some* degree of force, [although] it does not give the officer license to use force without limit. The force used by the officer must be reasonably related to the nature of the resistance and the force used, threatened, or reasonably perceived to be threatened, against the officer." (emphasis in original)), and posing a risk to both the arresting officers and the public, which was beginning to congregate around him. Thus, there is no genuine issue of material fact requiring a trial on plaintiff's excessive force claim. Accordingly, the branch of defendants' motion seeking summary judgment dismissing plaintiff's Fourth Amendment excessive force claim is granted and that claim is dismissed in its entirety

with prejudice.[5]

D.    State Law Claims

State notice of claim requirements apply to state law claims brought in federal court. <u>See</u>

<u>Felder v. Casey</u>, 487 U.S. 131, 151, 108 S.Ct. 2302, 101 L.Ed.2d 123 (1988); <u>Parise v. New York</u>

<u>City Department of Sanitation</u>, 306 Fed. Appx. 695, 697 (2d Cir. Jan. 16, 2009) (summary

order); <u>Hardy v. New York City Health & Hosp. Corp.</u>, 164 F.3d 789, 793 (2d Cir. 1999).  Under

New York law, service of a notice of claim upon a municipality or municipal corporation is a

condition precedent to maintaining a tort action against the municipality or municipal

corporation, or any of its officers, agents or employees acting within the scope of their

employment.  N.Y. Gen. Mun. L. §§ 50-e and 50-i(1); <u>see also</u> N.Y. C.P.L.R. § 9801(1) ("No

action shall be maintained against the village for a personal injury * * * alleged to have been

sustained by reason of the * * * wrongful act of the village, or of any officer, agent or employee

thereof, unless a notice of claim shall have been made and served in compliance with section

fifty-e of the general municipal law."); <u>Davidson v. Bronx Municipal Hospital</u>, 64 N.Y.2d 59, 61,

484 N.Y.S.2d 533, 473 N.E.2d 761 (1984) ("Service of a notice of claim * * * is a condition

precedent to a lawsuit against a municipal corporation."); <u>Bovich v. East Meadow Public Library</u>,

16 A.D.3d 11, 16, 789 N.Y.S.2d 511 (2d Dept. 2005) (holding that Section 50-i of the New York

General Municipal Law "requires the service of a notice of claim as a condition precedent to suit

in virtually any tort action against a city, county, town, village, fire district or school district.")

---

[5] In light of the dismissal of all of plaintiff's Section 1983 claims, it is unnecessary to address defendants' contention that Ridley and Johnson are shielded from liability pursuant to the doctrine of qualified immunity.

The notice of claim must be served within ninety (90) days after the claim arises, N.Y. Gen. Mun. Law § 50-e(1)(a), and the plaintiff must commence any tort action seeking, *inter alia*, damages for personal injury against the municipality or municipal corporation, its officers, agents, servants or employees, within one (1) year and ninety (90) days "after the happening of the event upon which the claim is based." N.Y. Gen. Mun. L. § 50-i(1)(a). "Notice of claim requirements 'are construed strictly by New York state courts * * * [and a] [f]ailure to comply with th[o]se requirements ordinarily requires a dismissal for failure to state a cause of action." Hardy, 164 F.3d at 793-794; see also Davidson, 64 N.Y.2d at 62, 484 N.Y.S.2d 533 ("Failure to comply with provisions requiring notice and presentment of claims prior to the commencement of litigation ordinarily requires dismissal.")

Since it is undisputed that plaintiff did not comply with the notice of claim requirements under New York law, the branch of defendants' motion seeking dismissal of any state law claims asserted in the complaint is granted and the state law claims are dismissed with prejudice. See, e.g. Grays v. City of New Rochelle, 354 F. Supp. 2d 323, 326 (S.D.N.Y. 2005); Brogdon v. City of New Rochelle, 200 F. Supp. 2d 411, 428 (S.D.N.Y. 2002); see also Ruiz v. Herrera, 745 F. Supp. 940, 945-46 (S.D.N.Y. 1990) (holding that the plaintiff was required to serve a notice of claim on the Village as a condition precedent to filing a civil action against the police officers acting in the performance of their duties and within the scope of their employment at the time of the incident, and who were entitled to indemnification); Eugene Racanelli, Inc. v. Incorporated Village of Babylon, 92 A.D. 3d 635, 636, 938 N.Y.S.2d 192 (2d Dept. 2012), lv. denied, 19 N.Y.3d 805, 949 N.Y.S.2d 343, 972 N.E,2d 508 (2012) (affirming dismissal of claims based

upon the plaintiff's failure to plead and prove compliance with N.Y. C.P.L.R. § 9801).[6]

III.    Conclusion

For the reasons stated herein, the branches of defendants' motion seeking summary judgment dismissing the complaint pursuant to Rule 56 of the Federal Rules of Civil Procedure is granted and the complaint is dismissed in its entirety with prejudice.  The Clerk of the Court shall enter judgment in favor of defendants and against plaintiff, close this case and, pursuant to Rule 77(d)(1) of the Federal Rules of Civil Procedure, serve notice of entry of this Order upon all parties, including mailing a copy of the Order to the *pro se* plaintiff at his last known address, <u>see</u> Fed. R. Civ. P. 5(b)(2)(C).

SO ORDERED.

s/ Sandra J. Feuerstein

_____
SANDRA J. FEUERSTEIN
United States District Judge

Dated: October 19, 2012
       Central Islip, N.Y.

---

[6] In light of the dismissal of all of plaintiff's claims on the merits, it is unnecessary to address the branch of defendants' motion seeking dismissal of plaintiff's complaint for failure to comply with their discovery demands and the Court's orders.